IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL CROCKETT, #M40122, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:21-cv-00570-MAB |
| ) | |
| ROB JEFFREYS, ET AL., ) | |
| ) | |
| Defendants. ) | |

<u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Sara Stover and Dr. Lynn Pittman's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 59). Plaintiff filed a response in opposition (Doc. 64). For the reasons set forth below, the motion is **DENIED** as to Dr. Pittman and **GRANTED** as to Stover.

PROCEDURAL BACKGROUND

Plaintiff Daniel Crockett filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1). Plaintiff alleges that Dr. Pittman and Stover were deliberately indifferent to his serious medical needs, specifically headaches, pain, and suffering (Doc. 13, p. 3).

The Court conducted a threshold review of the complaint, pursuant to 28 U.S.C. § 1915A, and allowed Plaintiff to proceed on the following claim:

> **Count 2:** Eighth Amendment claim against Jane Doe, Dr. Pittman, and NP Stover for exhibiting deliberate indifference to Plaintiff's serious medical

> needs related to the injury he suffered from the assault by his cellmate and his subsequent headaches, pain, and suffering.

(Doc. 13, p. 3).[1]

Defendants Stover and Dr. Pittman filed their motion for summary judgment on exhaustion of administrative remedies on December 28, 2021 (Doc. 59). Defendants Dee Dee Brookhart, Dale Monical, Jimmy Stanley and Maranda Tate did not move for summary judgment on exhaustion. Plaintiff filed his response on January 10, 2022 (Doc. 64). Defendants Stover and Dr. Pittman then filed their reply memorandum in support of their motion for summary judgment on January 13, 2022. (Doc. 65-1). Having closely reviewed the briefs and evidence submitted by both parties, the Court determined there were no disputed issues of material fact and therefore no hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) was necessary.

## FACTUAL BACKGROUND

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Lawrence, where the events at issue also took place (Doc. 13, p. 1). In his complaint, Plaintiff details that he was assaulted by another inmate on October 16, 2019 (*Id.* at p. 2). He was taken to the health care unit where a Jane Doe Nurse placed a bandage on his face, but did not schedule him to see a doctor. *Id.* Three days later, Plaintiff submitted a request to see a doctor due to severe pain and a deformity on his face. *Id.* X-rays were taken on October 30, 2019 and, on November 20, 2019, Dr.

---

[1] Jane Doe was later identified as Amie Ulrey on March 31, 2022 (Doc. 79). Ms. Ulrey just recently filed a motion for summary judgment on the issue of exhaustion (*see* Docs. 100, 101) and Plaintiff has filed a response (Doc. 103). The Court will address exhaustion as to Ms. Ulrey in a separate order in due time.

Pittman told him the x-rays did not show any fractures. *Id.* He asked her to feel the deformity on his face and she told him it was a bruise on the bone. *Id.* He subsequently sent requests to healthcare requesting to see the x-rays and for a second opinion. *Id.* After receiving no response, and continuing to suffer in pain, he filed a grievance on December 28, 2019. *Id.* After appealing the denial of his grievance to the Administrative Review Board (ARB), Plaintiff wrote to the healthcare unit administrator asking to be examined for a fracture. *Id.* Plaintiff was seen by NP Stover on April 23, 2020. *Id.* After touching the area with the deformity, NP Stover allegedly stated, "That's definitely a fracture," and scheduled additional x-rays which were taken on May 1, 2020. *Id.* The x-ray report stated a fracture could not be excluded. *Id.* Plaintiff continued to complain that he was in pain and suffering from severe headaches, but nothing was done. (*Id.* at p. 3). Plaintiff had a CT scan on July 1, 2020 which revealed multiple fractures. *Id.*

### GRIEVANCE RECORDS

There is only one grievance in the record related to the claim in Count 2 – Grievance 12-19-790, dated December 28, 2019 (Doc. 59-1, pp. 106-107, 116, 176-178). In the grievance, Plaintiff states he saw Dr. Pittman on November 20, 2019 for the results of x-rays taken for a possible fracture under his left eye (*Id.* at p. 116). Dr. Pittman told him the x-rays were negative for a fracture, but he felt a deformity in his face and believed Dr. Pittman's diagnosis was incorrect. *Id.* He asked to see the x-ray, for a "doctor to explain the reason for what [he] clearly feel[s]," and money damages if there was a fracture. *Id.* A counselor responded to the grievance on January 2, 2020, a grievance officer responded on February 24, 2020, and the Warden responded on February 25, 2020 (Doc. 59-1, pp.

107). The grievance was received by the Administrative Review Board (ARB) on March 19, 2020 and returned without review on August 17, 2020 because "request[s] are not grievable issues." (Doc. 59-1, p. 107).

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper if there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

Exhaustion is an affirmative defense, which the defendants bear the burden of

proving. *Pavey*, 663 F.3d at 903 (citations omitted). The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies prior to filing lawsuits in federal courts with regard to prison conditions. 42 U.S.C. § 1997e(a). Administrative exhaustion "means using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (2002)). This is a mandatory rule that a court does not have discretion to waive. *Id.* at 93. A lawsuit filed by a prisoner before administrative remedies have been exhausted must be dismissed. *Ford v. Johnson*, 362 F.3d 395, 398 (2004).

As an inmate in the Illinois Department of Corrections, Plaintiff was required to comply with the grievance procedures set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The regulations require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). If the counselor is unable to resolve the grievance, the grievance is then submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he may file an appeal with the IDOC Director through the ARB. 20 ILL. ADMIN. CODE §504.850(a). The ARB must receive the appeal within thirty days of the date of the CAO's decision. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g.*, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 must first exhaust all administrative remedies. *See* 42 U.S.C §1997e(a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008). Defendant Pittman argues that the sole grievance at issue was not exhausted because the ARB returned it as procedurally deficient stating "request[s] are not grievable issues." (Doc. 59, p. 8). It is evident that Plaintiff was grieving inadequate medical care (*See* Doc. 59-1, p. 107). In Grievance #12-19-790 (filed on December 28, 2019), Plaintiff claimed he went to healthcare on November 20, 2019 for x-ray results for a possible fracture. *Id.* Pittman advised the x-ray was negative for a fracture, but Plaintiff believed the diagnosis to be incorrect. *Id.* He requested to see the x-rays and speak with someone for a second opinion. (Doc. 13, p. 2). After weeks of no response, Plaintiff filed Grievance #12-19-790 where he grieved Pittman's alleged incorrect diagnosis and requested to see a doctor and the x-ray. (Doc. 59-1, p. 107). The grievance alerted prison officials to the nature of the wrong for which Plaintiff sought redress, and served its function of giving prison officials a fair

opportunity to address the complaint of inadequate medical care. The ARB then evaluated the grievance on its merits and denied it on the basis that Plaintiff received an x-ray and was informed of its result. *Id.* Even if the remedy Plaintiff was ultimately seeking was not one the ARB could grant, Plaintiff is still required to comply with the exhaustion requirements under the PLRA because the purpose of exhaustion is to permit the facility's administrative process to play out. *See Dole*, 438 F.3d at 808–09 ("Exhaustion is necessary even if the prisoner is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages . . . or if the prisoner believes that exhaustion is futile.") (citation omitted). Plaintiff did everything he could to exhaust the claim against Pittman and, as a result, the motion will be denied with respect to her.

However, it is not disputed that Plaintiff failed to file a grievance regarding his complaints about the interaction with NP Stover on April 23, 2020 or any subsequent interaction. The question is whether he was required to file a grievance in addition to the December 28, 2019 grievance when he was complaining about the same medical condition. In general, a prisoner is not required to file multiple, successive grievances raising the same issues if the objectionable condition is continuing. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (holding an inmate need not file multiple grievances against specific incidents of lockdowns since he was also challenging the prison's lockdown policies in general). However, separate complaints about particular incidents involving different people are required where the underlying facts or the complaints are different. *Id.*

Here, Plaintiff saw Pittman and Stover five months apart. While he claims Pittman failed to diagnose the fracture, he indicates Stover acknowledged that he likely had a fracture but ignored his complaints of continuing pain and headache. (Doc. 13, p. 2.). Although a grievance need only alert prison officials to the nature of the wrong for which redress is sought, the December 28, 2019 grievance cannot be construed to object to medical treatment Plaintiff would subsequently receive (or not receive) from a different medical provider months later. *See Mayo v. Snyder*, 166 F. App'x. 845, 848 (7th Cir. 2006) (holding an inmate failed to exhaust his remedies as he filed a grievance against medical personnel for failure to respond to requests for appointment, which cannot be construed to also object to medical treatment he would subsequently receive). While one grievance about Pittman's treatment might have sufficed to grieve a continuing course of inadequate medical treatment by Pittman, the continuing violation theory does not allow Plaintiff's December 28, 2019 grievance to exhaust his claim against Stover whose conduct would not occur until nearly four months later. *See Reed v. Larson*, No. 18-CV-1182-JPG, 2019 WL 6769319, at *3 (S.D. Ill. Dec. 12, 2019). As such, Plaintiff failed to exhaust administrative remedies as to the claim in Count 2 against Stover. Therefore, Stover will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 58) is **DENIED** as to Dr. Lynn Pittman and **GRANTED** as to Sara Stover. Defendant Stover is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

**DATED: September 20, 2022**

                                                  <u>**s/ Mark A. Beatty**</u>
                                                **MARK A. BEATTY**
                                                **United States Magistrate Judge**