IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL CROCKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-00570-MAB |
| | ) |
| ROB JEFFREYS, ET AL., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Amie Ulrey's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 101). Plaintiff filed a response in opposition (Doc. 103). For the reasons set forth below, the motion is **GRANTED**.

### PROCEDURAL BACKGROUND

Plaintiff Daniel Crockett filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1). Plaintiff alleges that Defendant Ulrey was deliberately indifferent to his serious medical needs, specifically headaches, pain, and suffering (Doc. 13, p. 3).

The Court conducted a threshold review of the first complaint, pursuant to 28 U.S.C. § 1915A, and allowed Plaintiff to proceed on the following claim relevant to the motion:

> **Count 2:** Eighth Amendment claim against Jane Doe[1], Dr. Pittman, and NP Stover for exhibiting deliberate indifference to Plaintiff's serious medical needs related to the injury he suffered from the assault by his cellmate and his subsequent headaches, pain, and suffering.

(Doc. 13, p. 3; 6).

Defendant Ulrey filed her motion for summary judgment on exhaustion of administrative remedies on August 1, 2022 (Doc. 101). Defendants Dee Dee Brookhart, Dale Monical, Jimmy Stanley, and Maranda Tate did not move for summary judgment on exhaustion. Plaintiff filed his response on August 29, 2022 (Doc. 103). Having closely reviewed the briefs and evidence submitted by both parties, the Court determined there were no disputed issues of material fact and therefore no hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) was necessary.

## FACTUAL BACKGROUND

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Lawrence, where the events at issue also took place (Doc. 13, p. 1). In his complaint, Plaintiff details that he was assaulted by another inmate on October 16, 2019 (*Id.* at p. 2). He was taken to the health care unit that same day where Defendant Ulrey placed a bandage on his face, but did not schedule him to see a doctor. *Id.* Three days later, Plaintiff submitted a request to see a doctor due to severe pain and a deformity on his face. *Id.* X-rays were taken on October 30, 2019 and, on November 20, 2019, Dr. Pittman told him the x-rays did not show any fractures. *Id.* He asked her to feel

---

[1] Plaintiff named Defendant Ulrey as Defendant Jane Doe Nurse in his original complaint. (Doc. 1, p. 3). Defendant Jane Doe Nurse was later identified as Defendant Amie Ulrey on January 13, 2022 (Doc. 66, p. 1; Doc. 79).

the deformity on his face and she told him it was a bruise on the bone. *Id.* He subsequently sent requests to healthcare requesting to see the x-rays and for a second opinion. *Id.* After receiving no response, and continuing to suffer in pain, he filed a grievance on December 28, 2019. *Id.* After appealing the denial of his grievance to the Administrative Review Board (ARB), Plaintiff wrote to the healthcare unit administrator asking to be examined for a fracture. (Doc. 13, p. 2). Sara Stover saw Plaintiff on April 23, 2020. *Id.* After touching the area with the deformity, Stover stated, "that's definitely a fracture" and scheduled additional x-rays which were taken on May 1, 2020. *Id.* The x-ray report stated a fracture could not be excluded. *Id.* Plaintiff continued to complain that he was in pain and suffering from severe headaches, but nothing was done. (*Id.* at p. 3). Plaintiff had a CT scan on July 1, 2020 which revealed multiple fractures. *Id.*

## GRIEVANCE RECORDS

There is only one grievance[2] in the record related to the claim in Count 2 – Grievance 12-19-790, dated December 28, 2019. (Doc. 101-1, p. 116). In Grievance 12-19-790, Plaintiff states he saw Dr. Pittman on November 20, 2019, for the results of x-rays taken for a possible fracture under his left eye. *Id.* Dr. Pittman told him the x-rays were negative for a fracture, but he felt a deformity in his face and believed Dr. Pittman's

---

[2] Plaintiff also filed Grievances 10-18-102 (Plaintiff grieves lack of a brain scan), 5-19-227 (Plaintiff claims issued mattress causes hip problems), 6-19-194 (Plaintiff grieves staff conduct on unknown counselor), 5-19-474, (Plaintiff grieves to be seen by doctor for corrective surgery), 6-19-215 (Plaintiff claims he is disabled), 7-19-76 (Plaintiff claims another inmate stole his pin number), 7-19-140 (Plaintiff claims to be hearing impaired), 11-19-162 (Plaintiff claims he is being denied communication with lawyers and family members), #10-19-677 (Plaintiff claims another inmate stole his pin), 7-20-197 (Plaintiff claims the mailroom opened his legal mail and returned to him), 11-20-165 (Plaintiff claims his housing unit counselor denied him an updated Orientation Manual), 4-20-39 (Plaintiff claims food supervisor harassed him), 06-20-012 (Plaintiff complains mail room opened and returned his legal mail) and 12-20-112 (Plaintiff claims legal/privileged letters were not sent out). These grievances are not relevant to the claim in Count 2.

diagnosis was incorrect. *Id.* He asked to see the x-ray, for a "doctor to explain the reason for what [he] clearly feel[s]," and money damages if there was a fracture. *Id.* Plaintiff did not mention Defendant Ulrey or any medical treatment provided to him in October of 2019 (when Defendant Ulrey saw him). *Id.* Nor did Plaintiff describe any actions Defendant Ulrey took or did not take in his care at this time. A grievance officer received the grievance on January 13, 2020 and responded to the grievance on February 24, 2020. *Id.* at 176. Plaintiff appealed to the Administrative Review Board on March 12, 2020. *Id.* The grievance was received by the Administrative Review Board (ARB) on March 19, 2020 and returned without review on August 17, 2020 because "request[s] are not grievable issues." *Id.* p. 172.

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is proper if there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a

prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies prior to filing lawsuits in federal courts with regard to prison conditions. 42 U.S.C. § 1997e(a). Administrative exhaustion "means using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (2002)). This is a mandatory rule that a court does not have discretion to waive. *Id.* at 93. A lawsuit filed by a prisoner before administrative remedies have been exhausted must be dismissed. *Ford v. Johnson*, 362 F.3d 395, 398 (2004).

As an inmate in the Illinois Department of Corrections, Plaintiff was required to comply with the grievance procedures set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. *Id.* at § 504.810(a). The grievance shall contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is involved in the complaint. *Id.* at § 504.810(c). This does not preclude

an offender from filing a grievance when the names of individuals are not known, but offender must include as much descriptive information about the individual as possible. *Id.* If the counselor is unable to resolve the grievance, the grievance is then submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). *Id.* at § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he may file an appeal with the IDOC Director through the ARB. *Id.* at §504.850(a). The ARB must receive the appeal within thirty days of the date of the CAO's decision. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination. *Id.* at § 504.850(d), (e).

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. E.g., *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## **DISCUSSION**

As an inmate in the Illinois Department of Corrections, Plaintiff is required to comply with the grievance procedures set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence,

or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). The grievance shall contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is involved in the complaint. *Id.* at § 504.810(c). This does not preclude an offender from filing a grievance when the names of individuals are not known, but an offender must include as much descriptive information about the individual as possible. *Id.*

Defendant Ulrey argues that Plaintiff failed to exhaust administrative remedies because none of Plaintiff's grievances identify or reference Defendant Ulrey or any actions or omissions by her (Doc. 101, p. 6). She argues that Plaintiff did not refer to *any* medical care provided by Defendant Ulrey on October 16, 2019 in his grievances. *Id.* In fact, Plaintiff identified Defendant Ulrey by name only once in a letter to the healthcare administrator, which was sent outside of the normal grievance process. *Id.* This letter was sent on April 2, 2020, and, in it, Plaintiff says that a nurse placed a bandage under his eye on October 16, 2019 before allowing him to go to administrative segregation. *Id.* Even in this letter, Defendant Ulrey argues Plaintiff did not complain specifically about her actions or medical treatment. *Id.*

As previously mentioned, inmates are required to provide factual details regarding each aspect of the offender's complaint, including the name of each person who is involved in the complaint. 20 ILL. ADMIN. CODE § 504.810(a). This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *Id.* The grievance must provide administrators with a fair

opportunity to address the grievance and, as a practical matter, this will require the prisoner's grievance to identify individuals who are connected with the problem. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *see also Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014). A grievance can sufficiently identify a person through a functional description even if it does not provide an actual name. *Smith v. Cook County*, No. 14C1789, 2017 WL 3278914, at *5 (N.D. Ill. August 2, 2017) (holding inmate's description of several officers, date and location was sufficiently specific to enable prison officials to investigate) (citing *Johnson v. Johnson*, 385 F.3d 503, 523 (5th Cir. 2004)). While an inmate is not required to know the name of the employee he complains about, he must include as much descriptive information about the individual as possible. *Roberts*, 745 F.3d at 236 (citing 20 ILL. ADMIN. CODE § 504.810(b)).

The only grievance that is fully exhausted in the record is Grievance 12-19-790. In this grievance, Plaintiff failed to include any information about the encounter with Defendant Ulrey on October 16, 2019. Rather, he complained of the incorrect diagnosis by Dr. Pittman and requested further explanation about his injury. (*See* Doc. 101-1, p. 116). Plaintiff's entire grievance targets Dr. Pittman's medical care and requests a remedy for Dr. Pittman's incorrect diagnosis. *Id.* There is nothing about this grievance that can be fairly read to be grieving any sort of issue about his medical treatment on October 16, 2019 by Defendant Ulrey. In fact, Plaintiff is unequivocally clear that he is complaining about treatment he received from Dr. Pittman on November 20, 2019 (specifically, what he claims to be an incorrect diagnosis).

As best the Court can tell, the only document in the record that even makes reference to the treatment provided by Defendant Ulrey is Plaintiff's April 2, 2020 letter. But this letter to the Healthcare Administrative Director cannot be used as a grievance because grievances must be addressed to institutional officers within sixty days of after the discovery of the incident that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). This letter does not comply with the grievance process outlined by the Illinois Administrative Code. Moreover, Ulrey treated Plaintiff on October 16, 2019 and he submitted this letter on April 2, 2020. Thus, it was submitted well outside of the 60 day window provided or in the Code.

In sum, Plaintiff has failed to exhaust his administrative remedies with respect to his claim against Defendant Ulrey and Plaintiff's claim against Defendant Ulrey must be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 100) filed by Defendant Amie Ulrey is **GRANTED**. Defendant Ulrey is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

**DATED: November 4, 2022**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**