IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL CROCKETT, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 3:21-CV-00570-MAB |
| | ) |
| ROB JEFFREYS, et al., | ) |
| | ) |
|       Defendants. | ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Dale Monical, Jimmy Stanley, Maranda Tate, and Brad Yonaka's motion for summary judgment (Docs. 123, 124). For the reasons discussed below, the motion for summary judgment is GRANTED (Doc. 123).

#### BACKGROUND

Plaintiff Daniel Crockett filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1). Specifically, Plaintiff alleges Defendants Monical, Stanley, Tate, and Yonaka (collectively, "Defendants") failed to protect him from an assault by his cellmate, Inmate Ferguson, that occurred on October 16, 2019 (Doc. 13, pp. 3-5).

Plaintiff was moved into a cell with Inmate Ferguson on September 24, 2019 (*Id.* at p. 1). Upon moving into the new cell, Inmate Ferguson threated Plaintiff with violence (*Id.* at pp. 1-2). Later that same day, Plaintiff informed Stanley of the threats Inmate Ferguson had made (*Id.* at p. 2; Doc. 124 at p. 2). Tate and Yonaka were also present when

Plaintiff spoke with Stanley (Doc. 124 at p. 2). Stanley visited Plaintiff after Plaintiff voluntarily returned to his cell and told Plaintiff that he had called the placement office ("placement") and requested a cell reassignment, but any move would not occur that day (*Id.*). Thereafter, Plaintiff asked Monical about the move on September 25, 2019 (Doc. 124 at p. 3)[1]. Monical told Plaintiff that placement was working on it and there was nothing further he could do (Doc. 13 at p. 2).

On October 16, 2019, Plaintiff was assaulted and struck in the face by Inmate Ferguson (*Id.*; *see also* Doc. 1 at p. 12). He was then taken to the Health Care Unit, where Plaintiff alleges he did not receive proper medical care (Doc. 13 at pp. 2-3).

The Court conducted a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, and allowed Plaintiff to proceed on the following claim against Defendants:

> Count 1: Eighth Amendment claim against [Yonaka], Sergeant Stanley, Counselor Tate, C/O Monical, and Assistant Warden Goins for failure to protect Plaintiff from the assault by his cellmate that occurred on October 16, 2019.[2]

On December 13, 2023, Defendants filed the instant motion for summary judgment and supporting memorandum (Docs. 123, 124). After receiving an extension of time (Doc. 127), Plaintiff filed his response to Defendants' motion on January 16, 2024 (Doc. 128).

---

[1] The Court notes that its threshold review order states Plaintiff spoke with Monical on September 25, 26, and 27, 2019 (*see* Doc. 13 at p. 2). However, Plaintiff did not dispute Defendants' Undisputed Material Facts, which states Plaintiff only told Defendants on September 24 and 25, 2019 (*see* Docs. 124, 128). For purposes of this Order, this distinction is trivial because the Court's analysis would not be different had Plaintiff disputed this material fact.

[2] The Court's threshold review order allowed Plaintiff's claim to proceed against Stanley, Tate, Monical, and a John Doe Wing Officer – who was later identified as Yonaka (Doc. 13 at p. 3; *see also* Docs. 51, 52). However, although Goins was also named in the complaint, Goins was dismissed because Plaintiff did not allege he had any personal involvement (Doc. 13 at p. 5).

**D‍EFENDANTS' M‍OTION FOR S‍UMMARY J‍UDGMENT (D‍OC. 123)**

1. *Summary Judgment Standard:*

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting F‍ED. R. C‍IV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

Additionally, as outlined in Local Rule 56.1(g), "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for purposes of summary judgment unless specifically disputed." Consequently, when a party fails to respond as outlined in Local Rule 56.1, "we depart from our usual deference towards the non-moving party" and accept all of the moving parties' "unopposed material facts as true." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). "Nevertheless, the Court is cognizant that 'a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule

56.1, does not, of course, automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law.'" *Pratt v. Bebout*, No. 3:21-CV-1262-MAB, 2024 WL 1013920, at *3 (S.D. Ill. Mar. 8, 2024) (quoting *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)).

    2. <u>Analysis</u>

"A prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety[.]" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (internal quotation marks and citations omitted). The test for determining whether a prison official was deliberately indifferent to that risk has both an objective and a subjective component. *Id.* The objective component requires the harm to which the prisoner was exposed to be objectively serious. *Id.* Meanwhile, the subjective component, also referred to as the deliberate indifference component, "requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

To demonstrate an official's actual knowledge of impending harm, inmates may rely on circumstantial evidence. *Id.* "In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.'" *Id.* (quoting *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996)). Complaints that convey a generalized, vague, or stale concern typically

do not satisfy this requirement. *Id.* Conversely, a complaint to an official that conveys a specific, credible, and imminent risk of harm typically will support an inference that the official had actual knowledge of the risk. *Id.* Notably, however, "[p]rison officials who had actual awareness of a substantial risk to the health or safety of an inmate incur no liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (internal quotation marks and citation omitted). Furthermore, courts "have consistently held that deliberate indifference requires a showing of more than mere or gross negligence." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff has satisfied the objective component of this test based upon his cellmate's threats of harming and/or killing him (Doc. 124-1 at transcript p. 29). *See, e.g.*, *Kozar v. Munoz*, 230 F. Supp. 3d 915, 920 (N.D. Ill. 2017) (finding the objective element satisfied by evidence demonstrating that the plaintiff was assaulted three times and suffered serious bodily harm). "Under this standard, a beating suffered at the hands of a fellow detainee, such as that alleged by Brown, clearly constitutes serious harm[.]" *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).

As to the subjective component, the evidence demonstrates that all four Defendants gained actual knowledge of the risk Plaintiff faced at the time he complained to them of Inmate Ferguson's threats. Plaintiff's deposition testimony provides ample evidence of such (Doc. 124-1). For instance, viewing the facts in the light most favorable to Plaintiff, Defendants Stanley, Yonaka, and Tate were all present and listening when

Plaintiff conveyed the threat to them on September 24, 2019 (*Id.*; *see also* Doc. 124 at p. 2). Likewise, Plaintiff directly discussed the threats he received with Defendant Monical one day later (Doc. 124 at p. 3). In fact, Defendant Monical informed Plaintiff that he already knew of the situation, further demonstrating his actual knowledge of the specific threat to Plaintiff's safety (*Id.*). Accordingly, Defendants had knowledge of the specific threat facing Plaintiff. *Gevas*, 798 F.3d at 481 ("By contrast, a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk.").

Having determined that Plaintiff faced an objectively serious risk of harm and Defendants had knowledge of that specific risk, the key question is whether Defendants' actions were reasonable under the circumstances. *See Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005) ("Even if an official is found to have been aware that the plaintiff was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner."); *Guzman v*, 495 F.3d at 857. This is because, "[w]hether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845. Additionally, "[m]ere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

In this case, Defendants promptly informed placement of Plaintiff's situation and requested a cell reassignment. Defendants also provided evidence in support of their claim that reassignment requests had to go through placement and were not something

they could do on their own (*see* Doc. 124-1 at transcript p. 34; Doc. 124-4). Needless to say, the Court believes that promptly calling placement to request Plaintiff be assigned to a new cell was a reasonable response under the circumstances. *See Borello v. Allison*, 446 F.3d 742, 748-49 (7th Cir. 2006) ("The evidence shows that Defendants responded immediately to Plaintiff's complaints about Abadia, even if their response turned out to be inadequate. This is in contrast to other cases in which we have found Eighth Amendment violations based on failure to protect, in which a prison official ignored an inmate's complaint that he feared violence from his cellmate or did not respond to actual violence between inmates.").

However, the Court's analysis does not end there because Plaintiff was not assigned to a new cell shortly after Defendants contacted placement. Instead, Plaintiff remained in his then-current cell with Inmate Ferguson for several weeks until he was ultimately attacked by Inmate Ferguson. Thus, while Defendants' initial response of calling placement was reasonable, the Court's inquiry focuses upon whether Defendants' response remained reasonable as days and weeks passed without any updates from placement.

The Seventh Circuit dealt with a similar dilemma in *Borello v. Allison*, 446 F.3d 742, 745 (7th Cir. 2006). In that case, the defendants had knowledge that the plaintiff faced a risk of serious harm from his cellmate. *Id.* After Plaintiff complained of that risk to the defendants, they promptly brought the plaintiff's cellmate to see a psychiatrist. *Id.* The psychiatrist examined the cellmate and determined he was fit to return to his cell. *Id.* Relying upon the psychiatrist's medical determination, the defendants allowed the

cellmate to return to his cell with the plaintiff. *Id.* Approximately one week later the plaintiff's cellmate struck him in the face with a radio, causing serious injury. *Id.*

On appeal, the Seventh Circuit was tasked with evaluating whether the defendants were deliberately indifferent by returning the plaintiff's cellmate to their cell following the psychiatrist's determination. *Id.* at 748-49. The Seventh Circuit answered in the negative, concluding "as a matter of law that the evidence is insufficient to find that Defendants responded unreasonably to the risk of harm posed to Plaintiff." *Id.* at 748. The Court emphasized that the case was dissimilar to other failure to protect cases because prison officials had not ignored the plaintiff's claim that he feared violence from his cellmate. *Id.* at 748-49. In addition, while the Seventh Circuit conceded that the defendants may have acted negligently by not moving the plaintiff to another cell, the court made clear that deliberate indifference only occurs in instances where prison officials "effectively condoned [the] attack on him[,]" which was plainly not the case based upon the defendants' actions. *Id.* at 749.

Here, as in *Borello*, it is evident that Defendants took action to protect Plaintiff by promptly contacting placement and requesting he be assigned to a different cell. Even if their actions were negligent—based upon either their failure to follow up with placement over the next three weeks or find some other solution for Plaintiff—this does not demonstrate that they "effectively condoned" the attack on Plaintiff. Rather, the evidence demonstrates Defendants needed to go through placement to have Plaintiff reassigned (*see* Doc. 124-4), and Defendants attempted to do this immediately after learning of Plaintiff's concerns. *See Quarles v. Sevier*, No. 3:13-CV-843, 2016 WL 1244026, at *4 (N.D.

Ind. Mar. 30, 2016) ("Sgt. Kochensparger's affidavit testimony that he did not have the authority to authorize the move remains undisputed. And, as such, his immediate reporting of the incident to the shift supervisor who *did* have the authority to effectuate the move was reasonable.").

Nevertheless, Plaintiff contends that Defendants' actions were unreasonable given the lengthy delay that followed (Doc. 128 at p. 3). According to Plaintiff, placement decisions typically take a few minutes, not days or weeks, thus demonstrating Defendants' deliberate indifference by failing to follow up with placement (*Id.*). However, Plaintiff has not provided or pointed to any evidence to support his contention. Instead, Plaintiff states that he "is prepared to show that he was told initially that the next day a move would take place" and that it "was necessary for the 5 day officer to contact placement again." (*Id.* at p. 2).

Crucially, in responding to a motion for summary judgment, Plaintiff was required to provide or cite to evidence supporting his claims and not simply assert that he is prepared to demonstrate such in the future. *See Shields v. Dart*, 664 F.3d 178, 182 (7th Cir. 2011) ("When a plaintiff like Shields fails to produce evidence to defeat summary judgment, a defendant moving for summary judgment need not support its motion with affidavits or other similar materials negating the opponent's claim.") (internal quotation marks and citation omitted). Without supporting evidence, Defendants' undisputed material facts and the record before the Court support the notion that placement must approve cell reassignments before any move occurs and cell reassignments "are sometimes not able to occur immediately upon request." (Doc. 124-4 at p. 2; *see also* Doc.

124 at p. 4). Consequently, Plaintiff has failed to demonstrate that Defendants were deliberately indifferent by failing to follow up with placement after making their initial request. *See Quarles*, 2016 WL 1244026, at *5 (finding the evidence presented demonstrated that the defendant took a "reasonable affirmative step" by immediately contacting his supervisor who could authorize a cell move); *Patton v. Reagle*, No. 3:23-CV-505-JD-MGG, 2023 WL 7041324, at *2 (N.D. Ind. Oct. 26, 2023) (Although a second assault subsequently occurred after the plaintiff told officials of the first attack, "Officer Snow and Sergeant Adams, however, took reasonable steps in response to the assault by reporting the issue to their superiors.").

This conclusion is bolstered by Plaintiff's failure to discuss his continued safety concerns with Defendants after a week or more had elapsed with no response from placement. In fact, the *Borello* Court justified its holding by pointing out that "[t]he attack on Plaintiff did not occur until a week later, and there was no evidence that Plaintiff complained about Abadia between January 16 and the time of the attack." *Borello*, 446 F.3d at 748. The record before this Court similarly lacks any evidence demonstrating that Defendants were even aware that Plaintiff had not been assigned a new cell, on top of the fact that Plaintiff did not bring this issue to their attention again. Without evidence demonstrating their continued awareness of Plaintiff's situation, the Court cannot conclude that Defendants acted unreasonably by failing to follow up with placement. Moreover, given that Defendants had taken an affirmative, reasonable action by immediately contacting placement, Defendants were "entitled to rely on the professional judgment and competence of the officials charged with processing" the reassignment

request. *Hunter v. Mueske*, 73 F.4th 561, 567 (7th Cir. 2023).

For these reasons, the Court concludes that Plaintiff has failed to demonstrate that Defendants effectively condoned the attack. Again, Defendants promptly took affirmative action to protect Plaintiff. And even if their chosen course of action was negligent (either in contacting placement rather than furnishing some other solution and/or by not following up), this does not rise to the level of deliberate indifference. "So long as they took measures reasonably calculated to address the risk [Plaintiff] faced, they cannot be held liable under § 1983, even though they ultimately failed to prevent his injury." *Id.* at 566.

Accordingly, the Court GRANTS Defendants' motion for summary judgment (Doc. 123).

## CONCLUSION

For the reasons discussed above, Defendants Monical, Stanley, Tate, and Yonaka's motion for summary judgment is GRANTED (Doc. 123). Additionally, because all other Defendants named in Plaintiff's complaint have already been dismissed (*see* Docs. 13, 88, 104, 106, 131), this case is **DISMISSED with prejudice.**

The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: September 10, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**